**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**CHARLES J. COLLET**
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**JOHN A. CREMER**
Cremer & Cremer
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KATHLEEN WALTON, Personal Representative of Estate of Mary Cox Swisher, Deceased | ) ) ) ) | |
| Appellant-Petitioner, | ) ) | |
| vs. | ) ) | No. 49A02-1307-EU-626 |
| ESTATE OF GLENN SWISHER, Deceased, | ) ) | |
| Appellee-Respondent. | ) ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Evan D. Goodman, Judge
Cause No. 49D08-1208-EU-30489

**January 29, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

A plaintiff may not enjoy the benefits of a contract without also accepting its burdens. In this case, Kathleen Walton, in her asserted capacity as the personal representative of her mother Mary Cox Swisher's terminated estate, asks that we reverse the probate court's grant of summary judgment in favor of the Estate of Glenn Swisher. Kathleen claims that Glenn's Estate was unjustly enriched when, pursuant to a Letter of Understanding (Letter) signed by himself and Kathleen, he received certain tax benefits that Kathleen alleges were never explained to her. She also contends that Glenn failed to pay for household maintenance and expenses that she and Glenn had agreed to in a separate understanding.

We find the Letter signed by Glenn and Kathleen, in her capacity as personal representative of Mary's Estate, to be an unambiguous and binding contract that negates the assertions made in Kathleen's claims against Glenn's Estate. Therefore, we affirm the probate court's grant of summary judgment in favor of Glenn's Estate.

FACTS

Mary died on May 14, 2011, and her will was probated on June 10, 2011. Kathleen was appointed personal representative of Mary's Estate. On September 8, 2011, Kathleen, who was represented by counsel, signed the Letter with Glenn, Mary's surviving husband. The Letter contains two sections. The first section, section A, describes the benefits Mary's Estate will receive, while the second section, section B, places burdens on Mary's Estate. The pertinent parts of the Letter read:

Glenn has fulfilled or will fulfill the following duties,

2

Payment of any outstanding financial obligations due to care facilities and nursing services for the support and care of Decedent, presently known or subsequently billed.

. . .

Payment of the sum of $5,000 dollars, by check payable to the ESTATE, in exchange for which the ESTATE agrees to relinquish any and all claims to any tax benefits or refunds received after date of death on any tax returns filed by GLENN and DECENDENT (or the ESTATE) prior or subsequent to the date of death.

. . .

The parties agree that the terms of this Letter of Understanding shall be binding on their respective heirs, successors and assigns and the terms provided herein can be revised only by a subsequent writing signed by both parties.

Appellee's App. p. 20.

After the Letter was executed, Glenn asked his advisors to prepare Federal Form 706 for filing by Mary's Estate. This filing is made to secure the United States Estate Tax Portability of Deceased Spouses Unused Exclusion (Unified Tax Credit) under the Internal Revenue Code section 2010(c). Mary's Estate signed and returned the Federal Form 706, as per the terms of the Letter, and it was filed on February 9, 2012.[1]

On March 23, 2012, Kathleen filed her Personal Representative's Verified Closing Statement to Close Estate upon Completion of Administration (Verified Closing Statement). Mary's Estate totaled $100,000 and was not subject to federal or state inheritance taxes. Before Kathleen filed the Verified Closing Statement, she did not make any additional claims for living expenses against Glenn. Likewise, after the closing

---

[1]The Appellee states that the completion of all tax issues in Glenn's Estate remain unresolved. Appellee's Br. p. 3.

of Mary's Estate, Kathleen made no efforts to claim additional living expenses during the remainder of Glenn's life.

Glenn died on July 20, 2012, and his will was probated on August 2, 2012. The first notice to creditors was on August 17, 2012. On November 14, Kathleen, filing as the personal representative of Mary's Estate, filed two claims, Claim One and Claim Two, against Glenn's Estate. In Claim One, Kathleen asks that payment in the amount of $500,000 be applied to Mary's Estate in compensation for Glenn's use of the Unified Tax Credit. Kathleen argues that, without compensation in addition to the $5,000 agreed to by the Letter, Glenn's Estate will be unjustly enriched because it was able to reduce its tax obligation. Additionally, Kathleen argues that Glenn's representatives violated Indiana Rules of Professional Conduct when they failed to explain the tax consequences of signing the form 706. In Claim Two, Kathleen argues that Glenn's Estate must reimburse Mary's Estate for money spent on living expenses incurred by Mary during her life based on an "understanding" Kathleen alleges she had with Glenn. Appellant's App. p. 3.

On November 29, 2012, Glenn's Estate disallowed both claims, and on January 9, 2013, filed its motion for summary judgment on both claims. Glenn's Estate argued first that, as Mary's Estate was closed, Kathleen could no longer act in her capacity as personal representative of the estate. It then argued that regardless of Kathleen's capacity, the Letter constituted a binding contract, and was therefore controlling. Issuing specific findings of fact and conclusions of law, the probate court granted Glenn's

4

Estate's motion for summary judgment. While the probate court concluded that Kathleen, as Mary's heir, could bring her claims as "any person" claiming an interest under Indiana Code section 29-1-14-21, it determined that the Letter was controlling as to the claims, stating that "the entire agreement, binding on all parties, heirs, and assigns, is contained within the language of the Letter." Appellant's App. p. 10 (emphasis in original).

As a result of its finding that the Letter was controlling, the probate court found that Glenn's Estate was entitled to summary judgment on both claims. Regarding Claim One, it determined that the Letter was "designed to leave Mary's Estate virtually debt free . . . [t]hat was essentially the entire bargain." The probate court found that the Letter was unambiguous and that there was no unjust enrichment. Regarding Claim Two, the court determined that Glenn had paid the expenses for the year proceeding Mary's death, which is all the Letter required him to do, and that there was "no legal obligation at law requiring Glenn to pay living expenses unless they emanated from care facilities or nursing care pursuant to the Letter." Id. (emphasis in original).

Kathleen now appeals.

### DISCUSSION AND DECISION

### I. Standard of Review

When we review the grant or denial of a summary judgment motion, we apply the same standard as the trial court. Kroger Co. v. Plonski, 930 N.E.2d 1, 4-5 (Ind. 2010). Summary judgment is appropriate only where the evidence shows that no genuine issue

of material fact exists and the moving party is entitled to judgment as a matter of law. Id.; Ind. Trial Rule 56(C). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmoving party, and all doubts concerning the existence of a material issue must be resolved against the non-moving party. Id. Nevertheless, the trial court's grant of summary judgment "enters appellate review clothed with a presumption of validity," and the appellant bears the burden of demonstrating that the trial court erred. Trustcorp Mortg. Co. v. Metro Mortg. Co. Inc., 867 N.E.2d 203, 211 (Ind. Ct. App. 2007).

## II. Claims One and Two

At the outset, we address the issues of Kathleen's capacity to make claims against Glenn's Estate. While Glenn's Estate is correct in its contention that Kathleen can no longer be the personal representative of Mary's terminated Estate, we agree with the probate court that Kathleen, as Mary's heir, could have brought her claim as "any person" claiming an interest under Indiana Code section 29-1-14-21. Accordingly, we decline the request of Glenn's Estate to dispense with the case on this basis.

Proceeding to the merits, we consider whether the Letter was determinative of Claims One and Two. As a general rule, Indiana law dictates that competent adults be given the "utmost liberty in entering into contracts that, when entered into freely and voluntarily, will be enforced by the courts." Zollman v. Geneva Leasing Associates Inc., 780 N.E.2d 387, 392 (Ind. Ct. App. 2002). Indiana has long allowed contracting parties

6

to enter into any agreement they desire so long as it is not illegal or against public policy. Id.

When reviewing a contract on appeal, our standard of review is well settled; if the language of the contract is unambiguous, the intent of the parties is determined from its four corners. Id. A contract is ambiguous only where a reasonable person could find its terms susceptible to more than one interpretation. Id.

Here, in Claim One, Kathleen states that Mary's Estate was entitled to reimbursement in the amount of $500,000 for Glenn's use of the Unified Tax Credit. However, the Letter clearly outlines the benefits due to and burdens placed on Mary's Estate and Glenn respectively. Glenn agreed to pay estate and income tax for Mary's Estate, to have his CPA's and advisors prepare returns for Mary's Estate, to waive his survivor allowance, and to pay Mary's Estate $5,000. Appellee's App. p. 19-20.

Kathleen, while represented by counsel, agreed to the Letter so as to receive these benefits. Id. In exchange, she promised that she would "relinquish any and all claims to any tax benefits or refunds received after date of death on any tax returns filed by [Glenn] and [Decendant] (or the [estate]) prior or subsequent to the date of death." Id. at 20. The Unified Tax Credit is a tax benefit. Kathleen signed the Letter, and she agreed to relinquish her claims in exchange for consideration; she cannot now complain that she should have bargained for more. Moreover, we are not convinced by her assertion that Glenn's representatives had a duty to explain to her the Unified Tax Credit. Kathleen

7

was represented by her own counsel at the time the Letter was executed, and we agree with the probate court that Glenn's counsel represented Glenn alone.

In Claim Two, Kathleen alleges that there was an understanding that Glenn was to take care of Mary's maintenance and housing fees, and states that, in contradiction with that understanding, two years prior to her death, Mary's pension was used to pay Mary's maintenance and housing fees in the amount of $32,000. Appellant's App. p. 16. The Letter clearly requires that Glenn pay outstanding financial obligations due to care facilities and nursing services for the support and care of [decedent]," as well as subsequently billed obligations. As Glenn paid the expenses for the year before Mary's death, he fulfilled the terms contained in the Letter, and there is no right of reimbursement. As the probate court stated, the Letter did "not include the expenses of daily living unless they were associated with nursing care and it would be beyond the pale to so interpret it." Appellant's App. p. 4.

We find that the Letter was an unambiguous and binding contract and is determinative of both Claims. Accordingly, we affirm the judgment of the probate court. NAJAM, J., and CRONE, J., concur.